IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PENDLETON DIVISION


JAMES ALAN NOVA,

        Case No. 2:13-cv-1085-ST

       Petitioner,

   v.

BRAD CAIN,

        FINDINGS AND RECOMMENDATION

       Respondent.

James F. Halley
James F. Halley, P.C.
735 SW First Ave.
Portland, OR 97204
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

     Attorney for Petitioner

Ellen F. Rosenblum, Attorney General
Nick M. Kallstrom, Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

     Attorneys for Respondent

STEWART, Magistrate Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the legality of his state-court convictions for rape. For the reasons that follow, the First Amended Petition for Writ of Habeas Corpus (docket #19) should be denied.

1 - FINDINGS AND RECOMMENDATION

## BACKGROUND

Petitioner met the victim in this case, J.F., on July 4, 2003, and began a romantic relationship shortly thereafter that lasted until early December of that year.  J.F. ended the relationship when she began to feel intimidated by petitioner after he told her that he beat up a former girlfriend and that he had been criminally charged for a violent encounter with a different former girlfriend.  Trial Transcript, 4/15/2005, p. 23.

More than three months later, on March 14, 2004, petitioner showed up unannounced at J.F.'s apartment at 11:00 p.m.  The peephole was partially obscured by paint, but she saw a man wearing a baseball cap and thought it was her father. When she opened the door, she was surprised to see petitioner, and thought "he looked high." *Id* at 33.  Petitioner entered, asked if anyone else was in the apartment, and after learning that J.F. was home alone, proceeded to rape her. *Id* at 34-36.  Petitioner raped her on the couch in the apartment's living room, then carried her to the bedroom where he raped her for between 30 and 60 minutes on a chair. *Id* at 34, 35, 47.  She frequently told him "no" and attempted to move away from him, but petitioner continued the assault while telling her to be quiet and not to fight because "[i]t will only get worse.  If will only be worse if you fight." *Id* at 43.

Petitioner then moved J.F. to her bed and proceeded to rape her there as well.  At that point, petitioner had been in the apartment for several hours. *Id* at 55.  He allowed the victim to go to the bathroom, and when she returned he allowed her to fall

2 - FINDINGS AND RECOMMENDATION

asleep but she only slept for "maybe ten minutes." *Id* at 56.
When J.F. awoke, petitioner had left the bedroom and was standing
next to the doorway of the apartment fully clothed. *Id* at 62.
When he noticed her, petitioner grabbed her again, took her back
to the bedroom, and "[h]e just put me back on the bed and took
his clothes off and, you know, just went back at it." *Id* at 63.
Petitioner raped J.F. for approximately 90 more minutes before he
got dressed again and exited the apartment. Respondent's Exhibit
110, p. 39.

The Washington County Grand Jury indicted petitioner on
three counts of Rape in the First Degree. Respondent's Exhibit
102. After petitioner waived a jury trial, the case proceeded to
a court trial where the judge found petitioner guilty of all
three charges. Each charge carried a 100-month sentence, and the
trial judge ran two of the sentences partial consecutive to each
other resulting in a total prison term of 140 months. Trial
Transcript, 4/3/2005, pp. 36-37.

Petitioner filed a direct appeal, but the Oregon Court of
Appeals affirmed the trial court's decision without issuing a
written opinion. *State v. Nova*, 218 Or. App. 735, 180 P.3d 763
(2008). Petitioner did not seek review by the Oregon Supreme
Court.

Petitioner next filed for post-conviction relief ("PCR") in
Malheur County where the PCR trial court denied relief on all of
his claims. Respondent's Exhibit 130. The Oregon Court of
Appeals affirmed that decision without opinion, and the Oregon
Supreme Court denied review. *Nova v. Nooth,* 253 Or. App. 607,

293 P.3d 1091 (2012), *rev. denied,* 353 Or. 562, 302 P.3d 1182 (2013).

<u>**GROUNDS FOR RELIEF**</u>

Petitioner filed this 28 U.S.C. § 2254 habeas corpus case on June 27, 2013, and filed his First Amended Petition on December 23, 2013, alleging that his trial attorney rendered ineffective assistance in the following particulars:

> 7(A). By failing to call witnesses who would have testified that petitioner was not a user of methamphetamine, as testified to by complainant J.F. at trial.

> 7(B). By failing to present evidence establishing that complainant J.F.'s father was African-American, for purposes of impeaching J.F.'s testimony that she believed that it was her father, rather than petitioner (a Caucasian) who had knocked at her door on the night of the incident;

> 7(C). By failing to alert the trial court judge to the requirement imposed by ORS 161.067(3) that, in order to punish petitioner separately for each count, the judge was required to determine that each act was separated by a pause that was sufficient to afford the defendant an opportunity to renounce criminal intent, and did not object that the trial judge had not made any such finding;

> 7(D). By failing to object, on the basis that complainant J.F. was testifying to matters not within her personal observation or knowledge, when she testified that she "knew defendant was really violent."

> 7(E). By failing to move in limine to prohibit complainant J.F. from testifying, on the basis either that it was inadmissible either under Rule 403, or as "prior bad acts" evidence under Rule 404 of the Oregon Evidence Code, or inadmissible as outside of

the witness's personal observation or knowledge, that petitioner had been in prison "a couple of times" for assaulting prior girlfriends, that petitioner used drugs, and that he was a drug addict.

7(F). By failing to present evidence that would have detracted from the credibility and reliability of complainant J.F., and by failing to adequately discredit her testimony during cross-examination, in the following particulars:

> 1. With evidence that complainant J.F. told a nurse who examined her that she (J.F.) and Petitioner kissed on the night of the alleged incident, and that she performed oral sex on Petitioner that night;

> 2. With evidence that would have established the true sequence of the relationship between complainant J.F. and Petitioner Nova;

> 3. With complainant's statement to the police that "he knows I don't do drugs and I've never done drugs", in direct contradiction to her admission during trial that she was "in recovery" for marijuana (and alcohol) use.

> 4. With complainant J.F.'s inconsistent explanations as to why she did not call the police.

7(G). By vastly underrating the probability of Petitioner Nova being convicted of the charges against him, advising Petitioner Nova that an acquittal was highly likely, and by telling Petitioner Nova that counsel had a "silver bullet" that would assure acquittal, all leading petitioner to make bad decisions such as waiving a jury and choosing to not testify.

8. Counsel's failures outlined above individually, and cumulatively, violated

>       petitioner's right to the effective
>       assistance of counsel.

Amended Petition (docket #19), pp. 2-4.

Respondent asks the court to deny relief on the First Amended Petition because many of the claims are procedurally defaulted and because the Oregon state courts denied the remaining claims in decisions that are entitled to deference.

**FINDINGS**

## I.   Unargued Claims

In his supporting memorandum, petitioner elects to argue Grounds 7(B), 7(C), 7(F)(1), 7(F)(2), 7(F)(3), 7(F)(4), and 8. Petitioner does not argue the merits of his remaining claims 7(A), 7(D), 7(E), and 7(G), nor does he address any of respondent's arguments as to why relief on these claims should be denied.  As such, petitioner has not carried his burden of proof with respect to these unargued claims.  *See Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (petitioner bears the burden of proving his claims).  Even if petitioner had briefed the merits of these claims, the court has examined them based upon the existing record and determined that they do not entitle him to relief.

## II.   Exhaustion and Procedural Default

A habeas petitioner must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of those claims. *Rose v. Lundy*, 455 U.S. 509, 519 (1982).  "As a general rule, a petitioner satisfies

the exhaustion requirement by fairly presenting the federal claim to the appropriate state courts . . . in the manner required by the state courts, thereby 'affording the state courts a meaningful opportunity to consider allegations of legal error.'" *Casey v. Moore,* 386 F.3d 896, 915-916 (9th Cir. 2004) (quoting *Vasquez v. Hillery*, 474 U.S. 254, 257, (1986)). If a habeas petitioner failed to present his claims to the state courts in a procedural context in which the merits of the claims were actually considered, then the claims have not been fairly presented to the state courts and, therefore, are not eligible for federal habeas corpus review. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *Castille v. Peoples*, 489 U.S. 346, 351 (1989).

A petitioner is deemed to have "procedurally defaulted" his claim if he failed to comply with a state procedural rule or failed to raise the claim at the state level at all. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). If a petitioner has procedurally defaulted a claim in state court, a federal court will not review the claim unless the petitioner shows "cause and prejudice" for the failure to present the constitutional issue to the state court, or makes a colorable showing of actual innocence. *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Sawyer v. Whitley*, 505 U.S. 333, 337 (1992); *Murray v. Carrier*, 477 U.S. 478, 485 (1986).

Respondent argues that petitioner failed to fairly present his Ground 8 claim pertaining to the cumulative impact of counsel's errors to Oregon's state courts, thereby leaving it unpreserved for federal review. Specifically, respondent

contends that petitioner failed to make any such allegation in his PCR Petition or to raise such a claim during his subsequent appeal.

A review of the record reveals that while petitioner did not raise the issue of cumulative impact within his PCR Petition, he did alert the PCR trial court to the claim during his PCR trial. Respondent's Exhibit 129, p. 42. He also placed the issue of cumulative impact squarely before the Oregon Court of Appeals and the Oregon Supreme Court. Respondent's Exhibit 131, p. 33; Respondent's Exhibit 133, p. 4. Where petitioner gave the state courts a fair opportunity to address this claim, he fairly presented it so as to adequately preserve it for federal review.

## III. **The Merits**

### A.    **Standard of Review**

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that

contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413.  The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410.  The state court's application of clearly established law must be objectively unreasonable. *Id* at 409.

B.   **Analysis**

1.   **Ground 7(C): Sufficient Pause**

Petitioner first argues that he could not have been guilty of three different counts of Rape in the First Degree because there was not a sufficient pause between the assaults.  He faults counsel for not seeking to merge the convictions on this basis pursuant to ORS 161.067(3).  He claims that if counsel had done so, the court would have merged the convictions into a single conviction carrying a 100-month sentence.

The court uses the general two-part test established by the Supreme Court to determine whether petitioner received ineffective assistance of counsel. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009).  First, petitioner must show that his

counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689.

Second, petitioner must show that his counsel's performance prejudiced the defense. The appropriate test for prejudice is whether the petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694. A reasonable probability is one which is sufficient to undermine confidence in the outcome of the trial. *Id* at 696. When *Strickland's* general standard is combined with the standard of review governing 28 U.S.C. § 2254 habeas corpus cases, the result is a "doubly deferential judicial review." *Mirzayance*, 129 S.Ct. at 1420.

The relevant portion of O.R.S. § 161.067(3) provides as follows:

> When the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the same statutory provision against the same victim, there are as many separately punishable offenses as there are violations, *except that each violation, to be separately punishable under this subsection, must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent.*

ORS § 161.067(3) (italics added).

The PCR trial court specifically found that "[t]here was sufficient pause between the rapes--therefore counsel's failure to object to the consecutive sentences (under any statute) did not prejudice the pet[itioner]." Respondent's Exhibit 130, p. 1. Petitioner contends that the finding of sufficient pause constitutes an unreasonable determination of the facts in light of the evidence presented so as to warrant habeas corpus relief pursuant to § 2254(d)(2).

The first rapes at issue occurred over the course of several hours (between 11:00 p.m. and 5:30 a.m.) and involved multiple locations in the apartment. Petitioner then returned to rape the victim again after he had gotten dressed and she had fallen asleep. Even if petitioner was compelled forward by his urge to climax (Respondent's Exhibit 110, p.3), the PCR trial court's finding of sufficient pause under Oregon law was not an unreasonable determination of the facts.[1] Accordingly, this claim does not entitle petitioner to habeas corpus relief.

### 2.   Ground 7(B): Race of J.F.'s Father

Petitioner also argues that trial counsel failed to impeach and effectively cross-examine J.F. in a number of particulars which would have helped to establish that the sexual encounter

---

[1] The court also notes that, while the interplay between 28 U.S.C. § 2254(d)(2) and § 2254(e)(1) is not entirely clear where a petitioner challenges a state court's factual finding, *Murray v. Schriro*, 745 F.3d 984, 999-1001 (9th Cir. 2014), petitioner offers no clear and convincing evidence to overcome the factual finding he seeks to challenge pursuant to § 2254(d)(2).

was consensual.  The PCR trial court did not address the claims individually, but instead noted that "[t]here were other areas of possible X-exam of the complainant, but after reading the X and the closing, this court FINDS that neither was inadequate. Failure of proof on all other claims, including not calling father, sister.  No inadequacy, no prejudice." Respondent's Exhibit 130, p. 1.

Taking petitioner's claims individually, he first believes that his counsel should have highlighted that J.F.'s father is of African-American descent.  Since petitioner is Caucasian, he reasons that he was easily distinguishable from J.F.'s father, which would have shown that J.F. knowingly let him because she wanted to see him.

J.F. testified that when petitioner knocked on her door, it was late at night; he was wearing a baseball cap like her father often did; the peephole was partially obscured by paint; and she had not seen petitioner in more than three months.  Trial Transcript, 2/15/2005, pp. 21, 30, 169.  Under these circumstances, it would have been of very little benefit to petitioner's defense, if any, to establish that the victim's father and petitioner were not of the same race.  Counsel was therefore not obligated to raise this issue.

### 3.   Ground 7(F)(1): Intimacy In Medical Record

Petitioner next points to a document in J.F.'s medical record entitled "Health History and Information Pertaining to Assault."  Respondent's Exhibit 111.  That document instructed the attending nurse at the rape examination, Diane Douglas, to

ask J.F., "Did your mouth have any contact with the assailant's body?" *Id* at 2.  Douglas wrote down that J.F. and petitioner had engaged in "kissing--penis to mouth."[2]  Respondent's Exhibit 111, p. 2.

During the trial, J.F. testified that she did not think that petitioner had subjected her to oral sex.  Trial Transcript, 2/15/2005, p. 82.  Petitioner argues that testimony shows that J.F.'s story changed over time and also reveals that the sexual encounter was more intimate and consensual than J.F. portrayed. He therefore concludes that counsel's failure to cross-examine J.F. on this point deprived the trial judge of the ability to gauge J.F.'s immediate reaction to the statement.

While J.F. would later testify that she did not think she and petitioner had engaged in oral sex, and while defense counsel did not cross-examine her on this point, he did address that portion of the medical record on cross-examination with Douglas. *Id* at 181-82.  He also touched briefly on the issue during his closing argument.  Trial Transcript, 2/16/2005, p. 43.

The record does not reflect that this as an area where counsel could have made significant headway in his cross-examination.  J.F. was not adamant about her recollection of the absence of oral sex during her testimony, and the fact that oral sex may have taken place does not, by itself, establish any level of voluntary intimacy.  Indeed, the information in Douglas'

---

[2] During trial, Douglas appeared to testify that this was not both kissing and oral sex, but that "there was kissing and it was penis to mouth. . . ."  Trial Transcript, 2/15/2005, p. 181.

report must be considered in the context in which it was given--a report of non-consensual sexual activity.   Thus, while counsel could have brought more emphasis to this point, his performance did not fall below an objective standard of reasonableness when he did not do so, and petitioner suffered no prejudice as a result.

### 4.   Ground 7(F)(2): Inception of Relationship

J.F. testified that she met petitioner on July 4, 2003, talked with him on the telephone from time to time thereafter, and did not begin dating him for roughly one month.  "In fact, I think we didn't even see each other again for maybe another month." *Id* at 21, 96.

Petitioner asserts that J.F.'s father was available to testify that the two had become intimate approximately one week after they first met.  He maintains that counsel should have put this evidence on to show that J.F. had a strong attraction to petitioner that might be "quickly rekindled."    Whether petitioner and J.F. began dating one week or four weeks after initially meeting is not relevant to when the relationship ended, or to whether they engaged in consensual sex more than three months after their breakup.

### 5.   Ground 7(F)(3): J.F.'s Drug Use

Petitioner also points to J.F.'s contradictory statements pertaining to her drug use.  She told the investigating detective that she had never used drugs, but testified during trial that she was in recovery for alcohol and marijuana use and had participated in a four-month intensive outpatient treatment

program.  Respondent's Exhibit 110, pp. 8-9; Trial Transcript, 2/15/2005, p. 19.  Petitioner theorizes that this shows J.F.'s willingness to lie to the detective in order to curry favor, and he faults counsel for failing to cross-examine J.F. about this inconsistency.

The State believes that J.F. was using the word "drugs" to describe only methamphetamine, but this is not altogether clear from the record.  Nevertheless, a review of the trial transcript reveals that counsel did elicit this discrepancy in his cross-examination of Washington County Deputy Sheriff Richard Hartle, thereby placing the issue in front of the trier of fact.  *Id* at 199.  Counsel might have cross-examined J.F. about this discrepancy in an attempt to damage her credibility, but his failure to do so did not have a material impact on the trial and did not result in prejudice.

### 6.    Ground 7(F)(4): Failure to Call the Police

When petitioner left the apartment following the rapes, J.F. did not contact the police.  Instead, she composed herself and went to the "welfare office" where a woman told her that she should go to the hospital.  *Id* at 71.  During her police interview, the issue of contacting the police came up, albeit indirectly:

> And [petitioner] was on the left hand side [of the bed].  And the left hand side of the bed was where my phone was plugged in the wall too.  The entire time I was kept on that side of the bed.  Like I could not have ever – there was never an opportunity where I could have reached my phone even though it was right there.  And – but also, I don't

> know that I would have like picked it up and
> called the police anyway, but – I was really
> starting to feel like you know I was
> cooperating, and, I don't know, I was just
> really confused.

Respondent's Exhibit 110, p. 37.

At trial, J.F. testified that she was reluctant to call the police because she cared about petitioner, knew he was on parole at the time, and did not want to get him in trouble for something she did not think he would do were it not for the influence of narcotics.   Trial Transcript, 2/15/2005, pp. 74-75.   She "was concerned about him and [she] was confused. [She] was just really, really confused."  *Id* at 74.   She also stated:

> I mean, I was raised, you know, with the
> strict belief that you don't go to the cops.
> You don't rat people out.   You don't
> cooperate with the police.   The police are
> against you, you know.   I had grown up
> seeing. . . a few incidents where . . .
> police had beat people up really severely and
> the police were not on your side, you know.
> That's just not something you do.

*Id* at 75.

Petitioner characterizes J.F.'s statements to the police and those at trial as inconsistent and asserts that counsel should have highlighted the inconsistencies during his cross-examination of J.F.   However, J.F. was very consistent about the fact that she was confused by what happened.   The fact that she did not inform the investigating officer that she was raised not to trust the police was not surprising and would not have helped petitioner  for his counsel to highlight the fact that she did not wish to make such a disclosure to law enforcement personnel.

### 7.    Ground 8: Cumulative Error

Petitioner also contends that his allegations of ineffective assistance of counsel, taken cumulatively, rise to the level of a constitutional violation. That is not the case, however. While counsel could have conducted additional cross-examination in an attempt to impeach J.F.'s credibility, his performance did not fall below an objective standard of reasonableness given the totality of the record. The issues raised by petitioner were not so significant such that any failing on counsel's part prejudiced him. Accordingly the PCR trial court's decision is neither contrary to, nor an unreasonable application of, clearly established federal law.

### RECOMMENDATION

For the reasons identified above, the First Amended Petition for Writ of Habeas Corpus (docket #19) should be denied, and a judgment should be entered dismissing this case with prejudice.

The court should decline to issue a Certificate of Appealability on the basis that petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

### SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due **September 25, 2015.** If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

///

///

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 8th day of September, 2015.


s/ Janice M. Stewart_____
Janice M. Stewart
United States Magistrate Judge